EL PUEBLO ET AL., PETICIONARIOS, *v.* ARRILLAGA, DEMANDADO.

SOLICITUD para que se expida un auto de *mandamus* dirigido al Hon. Rafael Arrillaga Urrutia, Fiscal del Distrito de San Juan, Primer Distrito.

No. 207.—Resuelto en julio 13, 1922.

JEFES DE DEPARTAMENTO — FISCAL GENERAL — PODER EJECUTIVO. — Dentro de la rama ejecutiva del gobierno, es el Fiscal General el que tiene a su cargo la administración de justicia en Puerto Rico, pero la tiene bajo la inspección y control del Gobernador en quien reside el poder ejecutivo supremo y quien es el último responsable ante el Presidente de la ejecución de las leyes en la isla.

FISCAL GENERAL—FISCALES DE DISTRITO—TRASLADO DE FISCALES.—El Fiscal General en propios casos, puede ordenar por sí solo que el fiscal de un distrito cambie de lugar con el de otro distrito y su orden puede ser puesta en vigor si fuere necesario por medio de un auto de *mandamus*.

ID.—ID.—GOBERNADOR DE PUERTO RICO.—El Gobernador de Puerto Rico tiene fa-

cultad para revisar una orden del Fiscal General decretando el cambio de lugar de un fiscal de distrito.

ID. — ID. — CONFLICTO INTERNO — FACULTADES DE LAS CORTES. — Cuando los autos revelan un conflicto interno, doméstico, de política a seguir, dentro de cualquiera de las otras dos ramas del gobierno, la judicial generalmente sólo intervendrá para fijar la ley aplicable. No decidirá la línea de conducta que deba seguirse. Tal decisión corresponde a la propia rama dentro de la cual existe la divergencia de criterio.

Los hechos están expresados en la opinión.

Abogados de los peticionarios: *Hon. Attorney General* y *Sres. M. A. Muñoz* y *J. A. Loret.*

Abogados del demandado: *Sres. J. B. Soto, A. Aponte* y *R. Martínez Nadal.*

Opinión personal del JUEZ PRESIDENTE SR. DEL TORO.*

El Fiscal General de Puerto Rico presentó en esta Corte Suprema una solicitud para que se expidiera un auto de *mandamus* dirigido al Fiscal Arrillaga de la Corte de Distrito de San Juan, Primer Distrito, ordenándole que se trasladara al Distrito Judicial de Mayagüez en obediencia de una orden que recibiera del Fiscal General que había rehusado cumplir.

Desde que por vez primera se consideró la solicitud, la opinión de los jueces de esta corte no fué unánime en cuanto a si en un caso de tal naturaleza procedía el recurso extraordinario de *mandamus.* Finalmente se acordó librar una orden para mostrar causa y de tal modo tener una oportunidad de conocer mejor los hechos y estudiar con mayor detención la ley.

La orden del Fiscal General al Fiscal del Distrito, es como sigue:

"Department of Justice of Porto Rico.—Office of the Attorney General.—San Juan.—Mayo 31, 1922.—Hon. Rafael Arrillaga Urrutia, Fiscal del Primer Distrito, San Juan.—Señor:—Por la presente, en virtud de la autoridad conferídame por la ley, le ordeno a usted que proceda inmediatamente a trasladarse al Distrito de Mayagüez

---

* Las opiniones de los Jueces Asociados Sres. Wolf y Franco Soto se insertan a continuación de la presente en unión de los respectivos sumarios.

y hacerse cargo de la fiscalía de dicho distrito hasta nueva orden de este Departamento, haciendo entrega de todos los asuntos que tenga usted bajo su conocimiento al Hon. Domingo Massari, Fiscal del Segundo Distrito de San Juan.—Atentamente, Salvador Mestre, Attorney General.''

Y el Fiscal General alega que su facultad para dictar la orden y el deber de obedecerla por parte del fiscal del distrito, surgen de las siguientes disposiciones legales:

''El Attorney General tendrá a su cargo la administración de Justicia en Puerto Rico.'' Art. 14 del Acta Orgánica.

'' * * * Los Fiscales de las Cortes de Distrito estarán bajo la inspección (supervisión) administrativa del Attorney General en todos los asuntos pertenecientes a sus respectivas oficinas, pasando los informes y prestando los servicios que de tiempo en tiempo les exigiere el Attorney General.'' Art. 69 del Código Político.

'' * * * El Attorney General, en casos especiales, podrá disponer que el fiscal de un distrito cambie de lugar con el fiscal de otro distrito, por el tiempo que el Attorney General juzgare necesario.'' Segundo párrafo del art. 64 del Código Político, tal como quedó enmendado por ley de 8 de marzo de 1906. La enmienda consistió en la adición del segundo párrafo transcrito.

Cuando ocurrió el cambio de soberanía en Puerto Rico, existían además de los fiscales municipales, los de las Audiencias de lo Criminal de Ponce y Mayagüez y los de la Audiencia Territorial de Puerto Rico establecida en San Juan. Por la Constitución Autonómica de 1897 se había creado el cargo de Secretario de Gracia y Justicia, funcionario nombrado por el Gobernador. En el Gobernador estaba investida la suprema autoridad de la colonia. Artículo 41 de la Constitución.

Durante el período militar se promulgó la Orden General No. 114, 1899, por virtud de la cual se dividió la Isla en cinco distritos judiciales. Una corte de distrito compuesta de tres jueces fué organizada en cada distrito y un fiscal nombrado para cada corte. La Orden General No. 118, 1899, complementa la anterior. En su sección 10 expresa lo que sigue:

" * * * Cada corte de distrito tendrá un fiscal que repre-
sentará la ley en las causas criminales y en los casos civiles
apropiados." El Departamento de Justicia del Gobierno de
la Isla había sido organizado por la Orden General No. 98,
1899, creándose el cargo de Fiscal General, en sustitución del
Secretario de Justicia, con iguales funciones que las que usual-
mente corresponden a los Fiscales Generales de los Estados
de la Unión.

En 1900 el Gobierno Civil fué instaurado. Al Fiscal Ge-
neral se le dieron todas las atribuciones y funciones que por
la ley correspondían a los fiscales de los territorios y el po-
der judicial quedó residiendo en las cortes establecidas por
las autoridades militares que hasta entonces gobernaron la
Isla.

La Legislatura creada por la ley del Congreso de 1900,
aprobó el Código Político en 1902, y en 1904 pasó una ley
especial "proveyendo el nombramiento de fiscales de distrito,
definiendo sus deberes y para otros fines," cuya sección ter-
cera dice así:

"Será el deber de cada Fiscal de Distrito, el procesar en su dis-
trito a todos los delincuentes por crímenes y delitos de que pueda
conocer bajo la autoridad de 'El Pueblo de Puerto Rico' y ejercer
todas las acciones civiles que conciernan al Pueblo de Puerto Rico,
y deberá llenar cumplidamente todos los otros deberes que le con-
fieran las leyes y comisiones del Attorney General."

En 1919 la Legislatura establecida por la segunda Acta
Orgánica de Puerto Rico, pasó la Ley del Gran Jurado y
un cuerpo de ciudadanos en cada distrito interviene desde
entonces en la persecución de los delitos graves. A los fis-
cales de distrito les encomendó la ley la presentación al Gran
Jurado de todos los cargos por delitos que fueran de su com-
petencia, en la forma de acusaciones (*indictments*). En los
casos que no son de la competencia del Gran Jurado y una
vez que la acusación ha sido presentada a la corte en los

casos que son de su competencia, los fiscales siguen actuando de acuerdo con las leyes anteriores en vigor.

Por virtud de todo lo expuesto se concluye que durante la soberanía americana los fiscales de distrito han sido siempre en Puerto Rico los funcionarios encargados de perseguir los delincuentes, por sí solos con anterioridad a la Ley del Gran Jurado y con la intervención de dicho organismo en los delitos graves a partir del 1919, y que siempre ha existido también organizado en la Isla un Departamento Ejecutivo de Justicia a cuya cabeza ha estado un Fiscal General con poder para inspeccionar los fiscales de distrito y, desde 1906, con poder para disponer que el fiscal de un distrito cambie de lugar con el fiscal de otro distrito, en casos especiales y por el tiempo que juzgare necesario, imponiendo la ley expresamente, desde 1904, a los fiscales de distrito el deber de cumplir las comisiones del Fiscal General.

¿Hizo uso en este caso el Fiscal General de la facultad que la ley le confiere de disponer que un fiscal de un distrito cambie de lugar con el fiscal de otro distrito? ¿Encomendó el Fiscal General alguna comisión al fiscal del distrito que éste estuviera obligado a cumplir de acuerdo con la ley de 1904?

Partiendo de la base de la orden tal como aparece redactada y de la ley, ambas preguntas deben contestarse en la afirmativa.

Juzgada por sus propios términos, la orden es válida y el deber de cumplirla claro. Y siendo ello así, parece una consecuencia natural la procedencia del *mandamus,* aunque es necesario reconocer que raras veces se ha usado tal recurso para obligar a los funcionarios a cumplir órdenes de sus superiores.

Pero hay más. Las alegaciones muestran que en realidad de verdad lo que se pide al tribunal que resuelva es que el Fiscal del Distrito de San Juan, Primer Distrito, debe cumplir una orden del Fiscal General que lo separa tempo-

ralmente de su distrito porque a juicio del Fiscal General así lo requerían los fines de la justicia. Y de tal modo el caso toma los caracteres de un verdadero conflicto interno entre funcionarios de una de las ramas del gobierno, la ejecutiva, conflicto que se agrava y extiende a virtud de la intervención en el mismo del Gobernador.

En la comparecencia acordada, el fiscal del distrito hizo, entre otras, la siguiente alegación:

"Y finalmente alega el compareciente, en oposición a dicha solicitud y al remedio en ella solicitado, que el día seis de junio de 1922, el Gobernador de Puerto Rico dirigió al compareciente y recibió ésta el día siete del propio mes y año, la siguiente comunicación:

"'*San Juan, Porto Rico.—June 6, 1922.—Hon. Rafael Arrillaga. —Fiscal of the First Judicial District of San Juan.—San Juan, P. R.—Dear Sir:—Whereas it has been called to my attention that the Attorney General of Porto Rico has ordered your transfer as Fiscal from the 1st District of San Juan, Porto Rico to the District of Mayagüez, and no good cause appearing therefor, and none being given by the Attorney General for such transfer, and you were not appointed or commissioned as Fiscal of the Mayagüez District, but as Fiscal of the First District of San Juan, and whereas the Political Code of Porto Rico only authorizes the Attorney General to transfer Fiscals for special causes shown, and no good reason has been given, but on the contrary it appears that said order was not made according to law.—Now, therefore, under and by virtue of the authority vested in me by Section 12 of the Organic Act, I hereby set aside and rescind said order, and direct that you attend to the duties of the office appointed and commissioned by me.—Done at my office in the city of San Juan this 6th day of June, 1922.—(Sgd.)    E. Mont. Reily, Governor.'*"

¿Se trata de una orden claramente dictada sin autoridad y de la cual, por lo tanto, pueda prescindirse, quedando así el conflicto reducido a sus primitivos límites, o se trata de una orden ejecutiva dictada con plena jurisdicción?

Estudiaré el problema. El artículo 12 del Acta Orgánica en vigor prescribe que *el poder ejecutivo supremo de la Isla* reside en un funcionario ejecutivo, cuyo título oficial será

Gobernador de Puerto Rico. Dicho funcionario se nombra por el Presidente con el concurso y consentimiento del Senado y ejerce su cargo a voluntad del Presidente. Es responsable de la fiel ejecución de las leyes, y tiene, palabras textuales de la ley, *la inspección y control general de todos los departamentos y negociados del Gobierno de Puerto Rico, en todo aquello que no sea incompatible con las disposiciones de esta ley.*

Por el artículo 13 se crean los Departamentos Ejecutivos del Gobierno, entre ellos el Departamento de Justicia cuyo jefe será conocido con el nombre de Fiscal General y será nombrado por el Presidente con el concurso y consentimiento del Senado. Los jefes de departamento constituirán colectivamente una junta consultiva del Gobernador, que se conocerá con el nombre de Consejo Ejecutivo y dichos jefes "*desempeñarán bajo la inspección general del Gobernador, los deberes que más adelante se prescriben,* o que en lo sucesivo se prescribieren por ley, y aquellos otros deberes, no incompatibles con la ley, que el Gobernador con la aprobación del Presidente, les asignare."

Y *más adelante,* artículo 14, es que aparece el precepto invocado en primer término por el Fiscal General en este caso, a saber, *que tendrá a su cargo la administración de Justicia en Puerto Rico.*

No hay duda alguna que dentro de la rama ejecutiva del gobierno, es el Fiscal General el que tiene a su cargo la administración de Justicia en Puerto Rico, pero la tiene bajo la inspección y control del Gobernador en quien reside el poder ejecutivo supremo y quien es el último responsable ante el Presidente de la ejecución de las leyes en la Isla, y siendo ello así es necesario concluir que la orden del Gobernador no es una mera nulidad y que el Gobernador actuó con plena jurisdicción en el asunto. Es conveniente recordar que cuando se habla de administración de justicia, la ley se refiere a la parte *administrativa* de la misma. El Poder Ju-

dicial, como rama separada del Gobierno, no corresponde al
Gobernador, ni al Fiscal General, sino que reside en las cor-
tes de justicia.   Artículo 40 y siguientes del Acta Orgánica
de 1917.

Estoy enteramente conforme con la teoría de que el poder
de supervisión del Gobernador no puede extenderse a dictar
al Fiscal General la conducta que debe seguir en aquellas
actuaciones personalísimas, de las cuales debe responder
también personalmente, pero ese. no es aquí el caso.

La idea de la ley es que los jefes de departamento y el
Gobernador actúen en armonía, siendo el último el Jefe Su-
premo de ellos en la Isla.   Armonía no quiere decir· sumi-
sión.   Un jefe de departamento no está obligado a adoptar
ninguna regla de conducta ilegal o inmoral.   Tiene indepen-
dencia de acción y puede y debe actuar de acuerdo con su
leal saber y entender, pero ese mismo leal saber y entender
le indican que es parte de un todo que realiza una obra sub-
dividida pero común, a cuyo frente está una cabeza respon-
sable y directora: el Gobernador.   Si un conflicto surge, es
el deber de cada jefe de departamento sostener lo que a su
juicio estime justo.   Si no logra vencer y sigue convencido
de la justicia de su causa y se trata de una cuestión funda-
mental o en que el honor y la dignidad del gobierno así lo
exijan, existe dentro del mismo poder ejecutivo una estación
más alta: el Presidente.   Si aún allí, en esa última estación,
no obtuviere justicia, debe romper los lazos que lo ligan a
una administración que de tal manera actuara y dirigirse
al último tribunal que en las democracias existe: el Pueblo.

Habiendo llegado a la conclusión de que el Gobernador
actuó con jurisdicción en el asunto ¿puede la corte entrar
a juzgar la justicia o injusticia de su actitud?   El poder ju-
dicial tiene su límite.

"Frecuentemente el término 'facultad judicial,' como se emplea
en una constitución, no se define en la misma sino que se usa para

designar a una de las tres grandes ramas o departamentos en que se dividen los poderes del gobierno y por los cuales sus asuntos han de ser administrados. Las funciones principales del departamento judicial son declarar lo que es la ley y determinar los derechos de las partes de acuerdo con la misma más bien que por virtud de principios de moral para los cuales no hay apoyo en la constitución, estatuto o decisión judicial. Es un ejercicio de poder judicial a diferencia del legislativo y del ejecutivo que comprende discreción administrativa. Es por tanto el deber del departamento judicial interpretar la constitución y leyes, y determinar qué leyes están en vigor en un territorio determinado y en cierto tiempo, la naturaleza y alcance de los varios departamentos del gobierno, y si algún departamento se ha excedido en sus funciones constitucionales." 12 C. J. 871–72.

Tratar de penetrar en las intenciones de ambos funcionarios, el Fiscal, y el Gobernador; pretender resolver el conflicto interno no de ley, que ha quedado decidido, sino de conducta, de política a seguir, sería, a mi juicio, invadir la esfera de acción, peculiar, privada, doméstica del Poder Ejecutivo.

Durante la vista de este recurso se hizo la manifestación de que la situación en la Isla era tal, que la Corte Suprema tendría que hacerse cargo del gobierno. No haya temor de que a ese extremo se llegue. Si la Corte Suprema inspirada en el más noble deseo de impartir justicia, rebasara el límite de sus atribuciones, no obstante la nobleza de su deseo y la rectitud de su intención, realizaría un acto arbitrario, despótico, y en vez de constituir la salvaguardia, se convertiría en la amenaza de las libertades públicas.

El poder judicial que constantemente está recordando y fijando las limitaciones de los otros poderes que coordinados forman el gobierno del pueblo, por el pueblo y para el pueblo, debe ser muy cuidadoso de imponerse limitaciones a sí mismo.

No puedo ocultar que los hechos que originaron este caso;

los motivos que haya podido tener un Gobernador sobre el cual pesa la amenaza de una acusación ante un Gran Jurado para impedir que determinado fiscal sea separado de su conexión con el mismo; la manera como fué redactada, a quien fué dirigida y la fecha en que se libró la orden del Gobernador, y la situación de impotencia en que de momento queda un funcionario que alega que aspira al cumplimiento de su deber y que ha requerido el amparo de la corte, si es que su intención es recta, han agitado constantemente mi conciencia durante el curso de este asunto y me han hecho vacilar en la actitud última que debía asumir. Pero después de meditarlo bien, estoy convencido que la única resolución que procede, es la indicada, a saber: que no puede ni debe librarse el auto de *mandamus* que se solicita.

El conflicto envuelto, la situación anormal que los autos revelan debe resolverse por el propio Poder Ejecutivo del Gobierno. A su cabeza está el Presidente de la República. El impartir justicia no es patrimonio exclusivo de las cortes, y debe esperarse con entera confianza que el Presidente imparta justicia en este caso.

*Denegado el auto.*

Jueces concurrentes en la sentencia: Sres. Asociados Wolf, Hutchison y Franco Soto.

El Juez Asociado Sr. Aldrey disintió.